815 F.2d 701
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mary Mize ANDERSON, M. Edward Rumage, William Earl Wingo and
Fyke Farmer, Plaintiffs-Appellants,
v.
Samuel R. PIERCE, Jr., Secretary of the Department of
Housing and Urban Development; Metropolitan Government of
Nashville and Davidson County; Richard H. Fulton; Charles
E. Cardwell; Robert B. Puryear, III; Metropolitan
Development and Housing Agency; and United States of
America, Defendants- Appellees.
 Nos. 84-5966, 85-5627.
 United States Court of Appeals, Sixth Circuit.
 March 25, 1987.
 
 Before NELSON and RYAN, Circuit Judges, and ENSLEN, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 This case presents issues concerning the power of a federal court to rid its docket of a frivolous and vexatious lawsuits brought by individuals having no standing to sue. A corollary issue is the propriety of sanctions imposed upon the plaintiffs and their counsel.
 
 
 2
 Plaintiffs sued defendants in federal court, and their suit was dismissed on the grounds that they lacked standing because they failed to describe themselves and their grievance in such a way that a federal court would be entitled to assume jurisdiction over their dispute. The district court found plaintiffs' lack of standing to bring suit so apparent and their claims so frivolous that costs were assessed against them. Furthermore, the district judge retained jurisdiction over any subsequent suits involving the same issues and parties, subsequently assessed additional costs, and even approved removal of a later suit filed in a state court in order that that suit might also be dismissed. Finally, the plaintiffs moved to disqualify the district judge, and now appeal the denial of that motion and other orders entered against them, while the defendants seek additional assessments of costs against the plaintiffs for filing this assertedly frivolous appeal.
 
 
 3
 Because we fail to perceive even a good faith attempt to plead standing, we conclude that dismissal of plaintiffs' suit was appropriate and the award of costs and attorney's fees against plaintiffs was warranted. Because plaintiffs filed no timely appeal from the district judge's refusal to disqualify himself, this issue is not properly before the court.
 
 
 4
 We conclude, however, that because the federal removal statute is to be strictly construed against removal, the district court erred in failing to remand the suit filed by plaintiffs in state court. Finally, because appeal of the latter issue was not unjustified, the assessment of costs of appeal is not warranted.
 
 I.
 
 5
 This case was brought as a taxpayer suit against the defendant federal and municipal governments and individual officials, seeking to set aside an agreement between defendant Pierce, Secretary of the Department of Housing and Urban Development (HUD), and defendant Metropolitan Government of Nashville and Davidson County (Metro). The agreement, negotiated by defendant Mayor Fulton and other local officials--two of whom, Cardwell and Puryear, are also named as defendants--provided for an Urban Development Action Grant (UDAG) in the amount of $9,750,000 to be awarded to Metro to help fund a convention center construction project in Nashville.
 
 
 6
 In order to carry its share of the cost of preparing the site, the Metro city council authorized the sale of municipal bonds, and these bonds were issued in 1981 as three-year notes, paying an interest rate of 10.5%. The total amount of the note sale was $39.5 million. In addition to seeking cancellation of the UDAG, plaintiffs also request that all funds that have accrued to Metro as a result of the bond sale be returned to the bond holders "pro rata" rather than committed to convention center funding. Assuming a shortfall, plaintiffs further ask that a lien be declared on all property involved in the convention center development so that bondholders may be paid off.
 
 
 7
 Plaintiffs also assume that Metro has incurred federal income tax liability on "arbitrage income" earned by investing the proceeds of the bond issue, and accordingly ask that the individual Metro officials named as defendants be required to pay these taxes on behalf of Metro. Plaintiffs do not allege that they themselves are bondholders.
 
 
 8
 Plaintiffs filed suit in federal court alleging that jurisdiction existed under various federal statutes. Defendants moved to dismiss and also filed a counterclaim alleging that this suit was at least the fifth in a series of frivolous lawsuits brought in both state and federal courts by plaintiff Anderson to harass Mayor Fulton and the Metro government. The counterclaim sought costs and attorney's fees under Fed.R.Civ.P. 11 and an injunction against the bringing of any suits by these plaintiffs against these defendants based on the same facts as were raised in the complaint.
 
 
 9
 After additional briefing and hearings, the district court dismissed the case for lack of standing, awarded costs and attorney's fees, and denied the requested injunction, while "retain[ing] jurisdiction in all subsequent litigation filed by any of these plaintiffs against any of these defendants involving the facts raised in this complaint."
 
 
 10
 Plaintiffs responded by filing motions for leave to file a supplemental complaint and to set aside earlier orders. Defendants responded to these motions and again petitioned for costs and attorney's fees. Defendants prevailed, motions were denied, and costs were assessed.
 
 
 11
 Plaintiffs then filed a suit in state court substantively similar to the dismissed action except that the federal defendants and federal theories were omitted. Defendants removed the action to the federal district court, where it was "consolidated" with the previous case and promptly dismissed. Plaintiffs contested the removal and sought a remand to the state court on the ground that the case raised no federal question and the parties were nondiverse. Defendants contended that the removal was proper due to the federal court's retention of jurisdiction, and also moved that plaintiffs be held in contempt of court for filing the state court action. The district court declined to remand but found contempt orders inappropriate, in part because it was not perfectly clear that filing the state court action was a wilful disregard of the court's previous orders. Clearing up any confusion, the district court adopted the course rejected earlier and enjoined plaintiffs "against filing any action against any of these defendants alleging the facts raised in this action in any court other than this court."
 
 
 12
 At this point, plaintiffs filed the first of three appeals to this Court, appealing all orders of the district court adverse to their contentions. This appeal was first dismissed by this Court because there had been no final judgment entered in the district court. On remand, final judgment was entered and the appeal recalled.
 
 
 13
 Over three months later, plaintiffs filed their motions for relief from judgment under Fed.R.Civ.P. 60(b)(6), for recusal of the district judge, and for disqualification of the district judge. These motions were denied and an appeal to this Court filed, but that appeal was dismissed for want of prosecution.
 
 
 14
 After the district court entered two more orders, one awarding additional attorney's fees, stemming from the 60(b) motion, and another order refusing to reconsider the first, plaintiffs filed their third appeal, which was consolidated with the first. It is these two appeals which are now before this Court.
 
 II.
 
 15
 Plaintiffs' complaint stated that they were "residents, citizens, registered voters and taxpayers of Nashville, Davidson County, Tennessee." Only their status as taxpayers might be a foundation for standing under any theory of conceivable application to the facts alleged. As residents, citizens, and voters, plaintiffs allege only that democratically elected officials have betrayed their public trust. In the absence of a statute creating a cause of action for the particular wrongs alleged, these allegations patently raise issues for political rather than the judicial resolution. Plaintiffs cite no statute expressly creating standing and do not argue that the statutes they have cited[1] impliedly create private causes of action.
 
 
 16
 Taxpayer standing is a narrow and seldom-successful theory. With regard to federal taxation, even "the expenditure of public funds in an allegedly unconstitutional manner is not an injury sufficient to confer standing, even though the plaintiff contributes to the public coffers as a taxpayer." Valley Forge Christian College v. Americans United for Separation Church and State, 454 U.S. 464, 477 (1982). Plaintiffs do not fit within the narrow exception to this rule stated in Flast v. Cohen, 392 U.S. 83 (1968), wherein plaintiffs sought to enjoin federal expenditures allegedly in violation of the establishment clause of the first amendment.
 
 
 17
 The plaintiffs best argument for standing is their claim that they are injured as municipal taxpayers as a result of Metro's action in authorizing the bond issue and providing for the retirement of the bond through property tax revenues (in anticipation of revenues from the convention center itself) in violation of the Tennessee constitution. The theory is that Metro's action may cost the plaintiffs money if the property tax revenues from the convention center and associated commercial development fail to offset Metro's bond commitment.
 
 
 18
 This theory fails as a matter of Tennessee law by virtue of a recent Tennessee Supreme Court decision involving some of the same parties to this case (plaintiffs Anderson and Farmer, and defendant Fulton). Metropolitan Government v. Fulton, 701 S.W.2d 597 (Tenn.1985). The court held that, while there is a narrow exception to the rule against taxpayer or citizen standing, that exception requires that demand for redress be made to the public officials or public body responsible. No such demand was made in that case or this one.
 
 
 19
 The plaintiffs' argument also fails as a matter of federal law, despite mistaken reliance upon Blachman v. Erieview Corp., 311 F.2d 85 (6th Cir.1962), cert. denied, 372 U.S. 941 (1963), and Doremus v. Board of Education, 342 U.S. 429, 433-34 (1952). Blachman involved a state statute expressly providing for taxpayer standing and does not support plaintiffs' argument. In Doremus, taxpayers sought to challenge a state statute as violative of the first amendment on the grounds that it called for religious activities to be conducted in the public schools. While the Court acknowledged that "[t]he interest of a taxpayer of a municipality in the application of its moneys is direct and immediate," id., the Court concluded that the case before it was not a "good faith pocketbook action." Id. The Court observed that the need to show injury is just as pertinent when a state law is challenged as when a federal law is challenged:
 
 
 20
 "The party who invokes the power [of the federal courts] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as a result of [the law's] enforcement, and not merely that he suffers in some indefinite way in common with people generally."
 
 
 21
 Id. Even a generous reading of plaintiff's complaint shows that it alleges no more than a speculative rise in taxes at some indefinite future time.
 
 
 22
 In sum, as taxpayers, plaintiffs have shown neither a "distinct and palpable injury," Warth v. Seldin, 422 U.S. 490, 501 (1975), nor a " 'fairly traceable' causal connection between the claimed injury and the challenged conduct." Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72 (1978). It need hardly be added that plaintiffs have shown no connection whatever between the award of the UDAG grant and any injury to themselves or any other citizen in Nashville. There being no standing, it is unnecessary to inquire whether some federal statute might confer jurisdiction over this subject matter; whether, for example, a "federal question" would be raised by these pleadings if suit had been brought by some individual or entity substantially and presently injured by the actions of these defendants.
 
 
 23
 The trial court correctly dismissed plaintiffs' suit for lack of standing.
 
 III.
 
 24
 Plaintiffs moved for the trial court's recusal on March 7, 1985, and for his disqualification on March 19, 1985. These motions were denied by orders entered March 11 and March 20, 1985 respectively. When these orders were entered, the first appeal in this case had already been filed, on November 2, 1984. The second appeal, which encompassed the March, 1985, orders, was dismissed for want of prosecution by this Court on May 7, 1985. The third appeal, from "all adverse orders", was filed June 21, 1985, over three months after entry of the later of the two orders regarding disqualification of the trial judge.
 
 
 25
 Fed.R.App.P. 4(a)(1) requires that appeals in which an agency or officer of the United States is a party be filed within 60 days of the order appealed from. Neither the first nor the third appeals, those which are presently before this Court, encompasses the orders concerning the requested disqualification of the trial judge. Therefore, this issue is not properly before the Court and we decline to address it.
 
 IV.
 
 26
 The district court found the removal of plaintiffs' state court action to federal court to be proper under 28 U.S.C. Sec. 1441, and then promptly dismissed the case for the same reasons the federal suit had been dismissed originally. The court relied upon the fact that, in the order dismissing the original federal action, the court had retained jurisdiction over all subsequent suits involving the same issues and parties.
 
 
 27
 Section Sec. 1441 permits removal only of actions within the original jurisdiction of the district court. Plaintiffs clearly framed their suit in the state court in such a way as to avoid the appearance of either a federal question or diversity of parties. Ordinarily, therefore, this case would not have been subject to removal, because it does not fall within the terms of Sec. 1441.
 
 
 28
 Defendants cite no cases approving the practice of (1) removing a case solely in order to dismiss it, or (2) removing a state case otherwise not within the original jurisdiction of the federal courts, solely on the ground that a particular district court had "retained jurisdiction" over all cases of a stripe similar to one previously before it. On the contrary, it is well-established that "the removal statute should be construed narrowly and against removal." People v. Kerr-McGee Chemical Corp., 677 F.2d 571, 576 (7th Cir.), cert. denied, 459 U.S. 1049 (1982). It is equally well-established that removal jurisdiction is "derivative, that is, a case can be removed to federal court only if it was properly before the state court." Id.
 
 
 29
 Both of these principles militate against the procedure adopted by the district court in this case. Proper application of the statute does not contemplate a practice of manufacturing original jurisdiction in the federal court by consolidating a nonremovable case with another case filed separately in the federal court. The removal statute incorporates the concept of derivative jurisdiction. Here, there was not only no federal jurisdiction, but no state jurisdiction either.
 
 
 30
 The district court legitimately exercised jurisdiction over the parties here, and may legitimately have imposed sanctions upon them for disobeying the express terms of a court order, if they indeed did so. However, the removal and dismissal of the state case exceeded the district court's constitutional powers. The state courts may be relied upon to dismiss genuinely frivolous suits filed there without the assistance of federal judges.
 
 
 31
 One case which arose recently in this circuit might be read as precedent for the procedure adopted by the district court here. In Wamp v. Chattanooga Housing Authority, 384 F.Supp. 251 (E.D.Tenn.1974), aff'd, 527 F.2d 595 (6th Cir.1975), federal defendants removed the case from the state court and then raised, in the district court, the plaintiffs' lack of standing in the state court as a defense. The district court held that the plaintiffs in fact lacked standing, and noted that, because removal jurisdiction is derivative, "In the absence of state court jurisdiction, a dismissal rather than a remand of the lawsuit is required." Id. at 253.
 
 
 32
 In this case, however, we believe a remand, rather than a dismissal, is required. In Wamp, an otherwise legitimate removal, supported by arguments tending to establish federal jurisdiction, was undermined by the technicality of lack of standing in the state court. Here, the lack of standing in the state court was apparent from the outset, and there was no intrinsic basis for federal jurisdiction. The district court sought not to exercise federal jurisdiction, but simply to eliminate state jurisdiction. Under these circumstances, removal was inappropriate, and the case should be returned to the state court from whose jurisdiction it was improperly removed for such further action as the state court deems appropriate. Dismissal, as in Wamp, would accomplish indirectly precisely what the district court was powerless to order directly.
 
 V.
 
 33
 Several of the orders appealed from assess attorney's fees against plaintiffs and their attorney. In response to defendants' motion requesting sanctions under Fed.R.Civ.P. 11, the district court found:
 
 
 34
 (1) That "plaintiffs are utterly without any basis for standing";
 
 
 35
 (2) That "plaintiffs never cited to a federal decision supporting their claim to standing";
 
 
 36
 (3) That plaintiffs' failure to plead standing was so clear that the complaint must be dismissed; and
 
 
 37
 (4) That "this lawsuit is part of a pattern of five or so frivolous and vexatious lawsuits."
 
 
 38
 In its order, the court stated that costs and attorney's fees would be awarded "pursuant to 28 U.S.C. Sec. 1927 and FED.R.CIV.P. 1 [sic ], the Court having found bad failth [sic ] by plaintiff's counsel in bringing this case."[2]
 
 
 39
 After defendants filed affidavits setting forth the amount of attorney's fees incurred in responding to plaintiffs' complaint and associated motions, the court entered two orders ordering plaintiffs and their attorney to pay those fees. Plaintiffs did not challenge the reasonableness of the amounts claimed.
 
 
 40
 After plaintiffs' 60(b) motion was denied, defendants brought a motion requesting an award of attorney's fees incurred in responding to that motion. Defendants referenced the court's previous orders and suggested that such an award was not only authorized by Rule 11, but by 28 U.S.C. Secs. 1920 and 1927, and was also within the court's inherent power. Plaintiffs did not oppose this motion. The court awarded the attorney's fees as requested on the ground that the pleadings filed had been "frivolous, unreasonable, and vexatious." The court did not cite any rule or statute or otherwise explain the authority for its order.
 
 
 41
 The substance of plaintiffs' 60(b) motion was a lengthy review of various "changed circumstances" assertedly lending some hitherto pretermitted merit to their initial complaint. Although nominally seeking relief from the October 3, 1984, order, as well as prior orders, this pleading made no reference whatever to the removal issue resolved in the October 3 order. In essence, the pleading was a continuation of the argument that led to the first two sanction orders--whether the complaint should have been dismissed as fatally defective. However, plaintiffs made no effort to address the fatal defect that led to the dismissal of their complaint--their lack of standing.
 
 
 42
 We conclude that: (1) None of the attorney's fees awarded to defendants pertained, even in an indirect way, to the removal dispute; thus, our holding that the district court erred in failing to remand the removed case does not require the reversal of any of the sanction orders; and (2) All three of the sanction orders derived from a single transgression--filing pleadings without making any good faith allegation of standing; thus, it is apparent that, although only the first order cited any authority, all three orders were issued principally under the authority of Fed.R.Civ.P. 11.
 
 Rule 11 provides in part:
 
 43
 "The signature of any attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."
 
 
 44
 The application of this rule to assess "a reasonable attorney's fee" for filing numerous pleadings without making any good faith allegation of standing is entirely appropriate, and may in fact be mandatory.
 
 
 45
 Accordingly, all orders assessing attorney's fees against plaintiffs and their attorney are affirmed.
 
 VI.
 
 46
 This court has the power to assess single or double costs against those who bring frivolous appeals under 28 U.S.C. Secs. 1912 and 1927, and Fed.R.App.P. 38. Without doubt, the plaintiffs' pleadings are an exercise in sustained obfuscation that has been very costly to the courts and to the defendants, and it appears that the original suit has no merit whatever. However, in view of our holding that the appeal from the order denying remand of the state court action was meritorious, we decline to impose sanctions on appeal.
 
 VII.
 
 47
 The district court's order of October 3, 1984, is REVERSED insofar as it denies plaintiffs' motion to remand the removed action to the state court and dismisses the removed action. The district court is instructed to remand the removed action to the state court.
 
 
 48
 All other orders appealed from are AFFIRMED.
 
 
 49
 Defendants' request for costs of appeal is DENIED.
 
 
 
 *
 The Honorable Richard A. Enslen, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 Plaintiffs' complaint cited the National Housing Act, Sec. 221, 12 U.S.C.A. Sec. 17151; 28 U.S.C.A. Sec. 1337; and 28 U.S.C.A. Sec. 1340. In a brief filed with this Court, plaintiffs cited 28 U.S.C.A. Sec. 1331
 
 
 [2]
 Evidently, the court intended to cite Rule 11, not Rule 1, which has no bearing on sanctions